THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLY STEPHEN ERICKSON, on behalf of himself and all others similarly situated, | CASE NO. 2:16-cv-00391-JLR |
| Plaintiff, | PLAINTIFF'S BRIEF IN RESPONSE TO SHOW CAUSE ORDER REGARDING STANDING UNDER SPOKEO |
| v. | |
| ELLIOTT BAY ADJUSTMENT COMPANY, INC. and JOHN DOES 1-25, | **NOTED FOR HEARING: MARCH 13, 2017** |
| Defendant. | |

## I.     INTRODUCTION

Plaintiff KELLY STEPHEN ERICKSON ("Plaintiff") respectfully responds to the Court's show cause order regarding whether Plaintiff has standing to maintain claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA") against defendant ELLIOTT BAY ADJUSTMENT COMPANY, INC. ("Defendant"), in light of the Supreme Court's decision in *Spokeo, Inc. v. Robins*, ___U.S. ___, 136 S. Ct. 1540, 2016 WL 2842447 (May 16, 2016). Since the decision in *Spokeo* was handed down, multiple district courts and a circuit court have found that a "violation of the FDCPA itself confers standing on a plaintiff." *See e.g., Linehan v. Allianceone Receivables Management, Inc.*, 091316 WAWDC, C15-1012-JCC. Accordingly, we evaluate whether Plaintiff has standing to maintain an action in federal court against Defendant.

PLAINTIFF'S RESPONSE TO
SHOW CAUSE ORDER – 1

CONCORD LAW, P.C.
144 Railroad Ave., Ste. 236
Edmonds, WA 98020
(206) 512-8029

## II.    ANALYSIS

### A.  Standing Following Spokeo, Inc. v. Robins – Concreteness of Injury in Fact

For standing, a plaintiff must first have suffered an injury in fact. *See*, *Warth v. Seldin*, 422 U.S. 490 (1975). The Third Circuit recently noted that *Spokeo* had little impact on its finding that a plaintiff suing under the Fair Credit Reporting Act (the FCRA) had Article III standing. *See, In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, No. 15-2309, 2017 WL 242554, at *10 (3d Cir. Jan. 20, 2017), stating that *Spokeo* "reemphasizes that Congress has the power to define injuries….that were previously inadequate in law." *Id.*, at 10, citing *Spokeo*, 136 S. Ct. at 1549.

The Ninth Circuit similarly found recently that, when a concrete substantive harm provided by statute is violated, nothing more is needed to for standing. *See, Van Patten v. Vertical Fitness Grp., LLC*, No. 14-55980, 2017 WL 460663 (9th Cir. Jan. 30, 2017). In *Van Patten*, the plaintiff received two text message ads over three days, and filed a putative class action under the TCPA. *See id.*, at *2. The Ninth rejected the Article III challenge, noting that "unlike in *Spokeo*, where a violation of a procedural requirement minimizing reporting inaccuracy may not cause actual harm or present any material risk of harm, the telemarketing text messages at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA." *Id.*, at 10-11. The Ninth Circuit concluded that because "unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients….a plaintiff alleging a violation under the TCPA <u>need not allege any additional harm beyond the one Congress has identified</u>." *Id.*, at 11 (emphasis added).

*Spokeo* held that a plaintiff seeking statutory damages still must establish Article III standing by showing that he "suffered an invasion of a legally protected interest that is concrete and particularized." *Spokeo*, 136 S.Ct. at 1548. A "concrete" injury is simply one that is real or de facto, *i.e.*, not abstract. *Id.*, at 1548. The extent of the injury is irrelevant, as even an "identifiable

CONCORD LAW, P.C.
144 Railroad Ave., Ste. 236
Edmonds, WA 98020
(206) 512-8029

trifle" is sufficient. See *United States v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, fn.14 (1973).

Clarifying that statutory injuries alone may not always be sufficient for standing, the court in *Spokeo* stated: "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*, at 1549. The Supreme Court explained that although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Id.* at 1549–50. And "[i]n determining whether an intangible harm constitutes injury in fact," the Court continued, "both history and the judgment of Congress play important roles." *Id.* at 1549.

The *Spokeo* court further explained that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.*, citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L.Ed.2d 377 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue"). The Supreme Court thus recognized that "Congress may "elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law" and that

PLAINTIFF'S RESPONSE TO
SHOW CAUSE ORDER – 3

"Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.*, citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

It is important to recognize that *Spokeo* held that the violation of a procedural right may, or may not be, sufficient to provide standing. The *Spokeo* majority did not discuss the concrete injury requirement in the context of substantive rights, which is what Plaintiff complains of here. Justice Thomas's concurrence fills this gap, confirming that in the context of substantive or "private" rights, the violation alone meets the concrete injury requirement:

> Common-law courts imposed different limitations on a plaintiff's right to bring suit depending on the type of right the plaintiff sought to vindicate. Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more. "Private rights" are rights "belonging to individuals, considered as individuals." 3 W. Blackstone, Commentaries *2 (hereinafter Blackstone). …. In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a de facto injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy.
>
> * * *
>
> A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right. *See, Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–374, 102 S.Ct. 1114, 71 L. Ed. 2d 214 (1982) (recognizing standing for a violation of the Fair Housing Act); *Tennessee Elec. Power Co. v. TVA*, 306 U.S. 118, 137–138, 59 S.Ct. 366, 83 L. Ed. 543 (1939) (recognizing that standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one  protected against tortious invasion, or one founded on a statute which confers a privilege").

*Spokeo*, 136 S.Ct. at 1551 and 1553 (Thomas, J., concurring).

The *Havens Realty* case Justice Thomas cites is particularly instructive. A unanimous Supreme Court ruled that the violation of the plaintiff's statutory right not to be lied to about available housing was an "injury in fact" even if the plaintiff had no intention of doing business with the defendant, and interacted with the defendant fully expecting it to violate her rights:

PLAINTIFF'S RESPONSE TO
SHOW CAUSE ORDER – 4

As we have previously recognized, "[the] actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, supra, at 500, quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).

*Havens Realty Corp.*, 455 U.S. at 373-74 (emphasis added).

Needless to say, one who interacts with a firm having no intention of doing business with it, and expecting the firm to lie, suffers no harm beyond the statutory violation. Nevertheless, in the context of substantive rights, the Court ruled nothing more is required to meet cross the Article III threshold. *See, Havens Realty Corp.*, 455 U.S. at 373-74; *see also, Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016) ("Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures…").

In this action, Plaintiff is not complaining of a mere procedural violation, but rather, of a substantive right not to be subjected to illegal and abusive collection practices. The repeated deceptive and abusive collection practices that Plaintiff was subjected to in this action were egregious, and are detailed in turn below.

**B.  *Analysis of the Concreteness Requirement***

As applied to this action, there can be no question that Plaintiff suffered the very same actual harm that Congress sought to prevent when it enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by

PLAINTIFF'S RESPONSE TO
SHOW CAUSE ORDER – 5

CONCORD LAW, P.C.
144 Railroad Ave., Ste. 236
Edmonds, WA 98020
(206) 512-8029

many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*. § 1692(e). After determining that the existing consumer protection laws were inadequate, *id*. § 1692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id*. § 1692k.

In the present case, the issue is whether Defendant's violations of the FDCPA, including those of the March 17, 2015 collection letter, caused actual harm to Plaintiff sufficient to meet the concreteness requirement of the standing threshold for a federal court's subject matter jurisdiction.

(1) **Contacting a Represented Consumer.**

As to standing under the first allegation of the Complaint (Dkt. #1), the FDCPA prohibits, with limited exceptions, a collector from communicating with a consumer who is represented by an attorney. This recognizes the consumers' right to retain and be represented by counsel, protects the consumers' relationship with their attorneys, and protects the attorney's authority to effectively represent the consumer by requiring the debt collector to communicate only with the attorney after being informed of the attorney's retention, name, and address. *See*, 15 USC § 1692c(a)(2).

The right of the represented consumer to be free of debt collector contacts is not procedural; it does not merely require collectors to follow certain procedures that might result in a benefit to a consumer, but affirmatively prohibits collectors from contacting represented consumers. This is a right that is invoked by the consumer's unilateral action of notifying the debt collector of the retention, name, and address of his attorney. But even if this right were merely procedural, its breach causes concrete harm to consumers. Violations not only breach the represented consumer's

CONCORD LAW, P.C.
144 Railroad Ave., Ste. 236
Edmonds, WA 98020
(206) 512-8029

right to be free of debt collector contacts, but also harms the consumer by interfering with the client-attorney relationship and undermining the attorney's authority as the consumer's representative. It can also result in the inadvertent and uncounseled disclosure of information, to the debtor's detriment.

(2) **False, Deceptive, or Misleading Representations or Means To Collect A Debt.**

Defendant's violations of Section 1692e similarly caused Plaintiff actual harm, and were not mere procedural missteps that had no chance of harming Plaintiff. As alleged in the Complaint, Defendant illegally added hundreds of dollars to the amounts owed by Plaintiff, justifying these charges under the guise of "Court Costs" and "attorney's fees." *See,* Docket 1, ¶21-31. To wit, the Complaint alleges that Defendant mailed Plaintiff a Collection Letter dated March 17, 2015 stating that the Plaintiff owed $120.00 in Principal and $54.33 in Interest, for a Total Due of $174.33. *See id.,* ¶21-23. That Letter threatened the imposition of 'Court Costs' if Plaintiff did not tender immediate payment. *Id.,* ¶24. True to its threats, Defendant then issued a second Collection Letter dated May 12, 2015. *Id.,* ¶27. This Collection Letter again stated that $120.00 in Principal was owed, with an additional amount of $56.54 in Interest, along with $283.00 in Court Costs, for a Total Due of $459.54. *Id.,* ¶28. In the same fashion, Defendant followed up with its September 10, 2015 Collection Letter, again stated that $120.00 in Principal was owed, with an additional amount of $61.32 in Interest, along with $323.00 in Court Costs, for a Total Due of $504.32. *Id.,* ¶39.

It is clear that demanding payment of an illegally overstated debt causes the actual harm the FDCPA was enacted to prevent. A number of courts have already noted that a debtor has suffered actual and concrete harm when a demand for an inflated amount has been made, even if no amount was actually paid in response to that demand. *See e.g., Blaha v. First National Collection Bureau*, 2:16-cv-2791-WHW-CLW (D.N.J. November, 14, 2016); *Carney v. Goldman,* No. CV 15-260-BRM-DEA, 2016 WL 7408849, at *4 (D.N.J. Dec. 22, 2016). Copies of these

PLAINTIFF'S RESPONSE TO
SHOW CAUSE ORDER – 7

decisions are annexed hereto as Exhibits A and B. The defendants in *Blaha* and *Carney* both argued that the plaintiffs lacked standing, because they had not actually paid any of the debt. *See, Blaha,* at *14 (arguing that Ms. Blaha "<u>never made any payments to Defendants as a result of the Letter</u>", and that accordingly, she could only show a "hypothetical and speculative injury"); *Carney,* at *7 ("Plaintiffs only suffered 'an informational injury' and 'a risk of economic injury' because they never made a payment to Goldman"). The Motions to Dismiss were denied in both of those cases, however, because the district courts found that the right Congress sought to protect in enacting the FDCPA was not merely procedural, "but substantive and of great importance. Further, the harm claimed by Plaintiff is precisely that which the statute was intended to guard against." *Blaha,* at *15-16; *Carney,* at *9.

This <u>exact same</u> argument was raised and rejected by the Seventh Circuit in *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998). In *Keele* boilerplate Collection Letters were mailed, adding a 'collection fee' to the unpaid balance of each account. *See id.,* at 591. The *Keele* defendants argued against class certification since the plaintiff did not pay the fee, and therefore could not have standing to represent a class of persons who did pay the fee. *See id.,* at 592. The Seventh emphatically rejected these arguments, finding that "the injuries she and the class members alleged were the receipt of the debt collection letters, not the payment of the $12.50 collection fee. ….. It is thus irrelevant whether or not she paid the collection fee." *Id.,* at 593. As found by the Seventh Circuit, it is not just the actual payment of the unauthorized fees which violate a consumer's rights under the FDCPA, but rather it is the act of seeking that illegal fee from debtors in the first place.

The Ninth Circuit, too, is in accord with the positions staked out by these courts, finding that the concrete injury required by Article III was present because the plaintiff suffered "the violation of his right not to be the target of misleading debt collection communications." *See,*

CONCORD LAW, P.C.
144 Railroad Ave., Ste. 236
Edmonds, WA 98020
(206) 512-8029

*Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014).

Critically, not only did Defendant contend that these ever increasing inflated amounts were owed by Plaintiff, Defendant <u>actually reported these inflated amounts on the Plaintiff's credit report</u>. A copy of Plaintiff's credit history is attached hereto as Exhibit C. As can be seen on page 12 of the attached credit history, the Defendant reported to Experian that the Plaintiff owed $460.00 on this debt (correlating to the 'Total Due' inclusive of the $283.00 in unauthorized charges asserted in the May 12, 2015 Collection Letter). *See,* Exhibit C. As can further be seen on page 12 of the attached credit history, the Defendant reported to Equifax that the Plaintiff owed $504.00 on this debt (correlating to the 'Total Due' inclusive of the $323.00 in unauthorized charges asserted in the September 10, 2015 Collection Letter). The Plaintiff was clearly harmed by his credit report falsely reflecting that he owed hundreds of dollars.

Finally, the risk of real harm created by Defendant's deceptive collection practices is also sufficiently concrete to convey Article III standing. It is self-explanatory that - by demanding payment of $460.00 or $504.00 – the Defendant created the very real risk that the Plaintiff would actually pay those heavily inflated amounts. Given that the Plaintiff did not actually owe those increased sums, the Defendant's actions subjected the Plaintiff to the risk <u>that the Plaintiff would pay hundreds of dollars more than he actually owed</u>. It is difficult to imagine what could be a more abusive debt collection practice, than the collecting of hundreds of dollars from debtors who did not actually owe those amounts. By the same token, there can be nothing more 'concrete' of a harm than being billed, and being directed to pay, hundreds of dollars more than the amounts actually owed, and being threatened by the imposition of additional 'Court Costs' if that payment was not forthcoming.

(3) **Obligation To Report The Debt As Disputed.**

Under the FDCPA, if a debt collector knows that a debt is disputed and reports that debt to

CONCORD LAW, P.C.
144 Railroad Ave., Ste. 236
Edmonds, WA 98020
(206) 512-8029

the consumer reporting agencies, the fact that the debt is disputed must be communicated to the credit reporting agency. *See,* 15 USC § 1692e(8). The Federal Trade Commission succinctly summarized this principle:

> **Section 807(8)** [also known as 15 USC § 1692e(8)] prohibits "Communicating or threatening to communicate to any person [false] credit information . . ., including the failure to communicate that a disputed debt is disputed."
>
> 1. *Disputed debt.* If a debt collector knows that a debt is disputed by the consumer, either from receipt of written notice (section 809) or other means, and reports it to a credit bureau, he must report it as disputed.

*See,* FTC Staff Commentary, 53 Fed.Reg. 50097-02, 50106 (Dec. 13, 1988).[1]

The FTC's position has been adopted by a number of Circuit Courts, including the Eighth and Tenth Circuits. *See e.g., Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173 (10th Cir. 2013).

As alleged in the Complaint, the Plaintiff clearly notified the Defendant on May 27, 2015 that he was disputing this debt. *See,* Docket 1, ¶29. Despite that dispute, the Defendant reported that debt to the consumer reporting agencies on September 3, 2015 and then again on January 19, 2016. *See id.,* ¶35. On neither of those instances did the Defendant report that the debt was disputed. *Id.,* ¶35. This was particularly egregious, considering the fact that the Plaintiff clearly does not owe these heavily inflated sums that he was reported to have owed, and advised the Defendant of that dispute.

By failing to comply with the FDCPA in this regard as well, the Defendant caused entirely inaccurate and incomplete information to be reported on the Plaintiff's credit report, and made it appear that the Plaintiff owed more money than he actually owed. Far from a procedural violation which has no chance of harming the Plaintiff, this was a concrete harm suffered by the Plaintiff,

---

[1] Also available at http://www.cardreport.com/laws/fdcpa/fdcpa-comment.html, last visited on March 13, 2017.

PLAINTIFF'S RESPONSE TO
SHOW CAUSE ORDER – 10

which had the actual result of causing the same direct harm that the FDCPA was enacted to prevent.

## III.   CONCLUSION

It is respectfully submitted that Plaintiff has suffered actual harm as a result of the Defendant's multiple violations of the FDCPA, and that Article III standing is therefore conferred by the presence of a concrete injury in this action. Far from the mere procedural violations that are insufficient to constitute a concrete injury, or the "incorrect zip code" harmless error hypothesized by Justice Alito in *Spokeo*[2], the plaintiff here was subjected to substantive violations of the FDCPA, which directly and significantly harmed him.

In flagrantly violating the FDCPA by (1) contacting the plaintiff even after knowing that the plaintiff was represented by counsel, (2) seeking to collect hundreds of dollars from the Plaintiff in excess of what was owed, and (3) in reporting that inflated amount on the plaintiff's credit report, the defendant caused actual and concrete harm to the plaintiff. It is therefore respectfully submitted that the plaintiff absolutely has Article III standing to maintain this action.

---

[2] *See, Spokeo, Inc. v. Robins,* 136 S. Ct. at 1550. ("[N]ot all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm").

PLAINTIFF'S RESPONSE TO
SHOW CAUSE ORDER – 11

CONCORD LAW, P.C.
144 Railroad Ave., Ste. 236
Edmonds, WA 98020
(206) 512-8029

Dated: March 13, 2017.

Respectfully submitted,

CONCORD LAW, P.C.

By: s/Ryan M. Pesicka

Ryan M. Pesicka, WSBA 48182
144 Railroad Ave., Ste. 236
Edmonds, WA 98020
ryan@concordlawseattle.com
(206) 512-8029 F: (206) 512-8914
*ATTORNEY FOR PLAINTIFF*

MARCUS & ZELMAN, LLC
Ari M. Marcus (*applying for admission pro hac vice*)
1500 Allaire Avenue – Suite 101
Ocean, NJ 07712
ari@marcuszelman.com
(732) 695-3282 F: (732) 298-6256
*ATTORNEYS FOR PLAINTIFF*

PLAINTIFF'S RESPONSE TO
SHOW CAUSE ORDER – 12