1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   KELLY ERICKSON,                        CASE NO. C16-0391JLR

11              Plaintiff,                  ORDER GRANTING MOTION
                                           TO CERTIFY CLASS
12         v.

13   ELLIOT BAY ADJUSTMENT
     COMPANY, INC. and JOHN DOES
14   1-25,

15              Defendants.

16                        **I.    INTRODUCTION**

17         Before the court is Plaintiff's Motion for Class Certification.  (Mot. (Dkt. # 11).)

18   The court has reviewed Mr. Erickson's motion, Defendant's ("Elliot Bay") response to

19   the motion (Resp. (Dkt. # 13)), Mr. Erickson's reply memorandum (Reply (Dkt. # 16)),

20   Mr. Erickson's response to the court's Order to Show Cause Regarding Standing under

21   //

22   //

ORDER- 1

*Spokeo*[1] (Show Cause Order (Dkt. # 17); (Erickson Supp. Br. (Dkt. # 19)), Elliot Bay's response to the Order to Show Cause (Elliot Bay Supp. Br. (Dkt. # 18)), the relevant portions of the record, and the applicable law.  Considering itself fully advised,[2] the court GRANTS Mr. Erickson's motion for class certification.

## II.    BACKGROUND

Defendant Elliot Bay is a "collection agency" and "debt collector" as defined by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6).  In 2015, Elliot Bay attempted to collect a debt from Plaintiff (and putative class representative), Mr. Erickson on behalf of Family Health Care ("FHC"), one of Elliot Bay's clients.  (Compl. (Dkt. # 1), ¶¶ 15, 16; Resp. at 2.)  Mr. Erickson alleges that many of Elliot Bay's attempts to collect the debt violated the FDCPA and two Washington consumer protection statutes.  (*See generally* Compl.)

On March 17, 2015, in its first attempt to collect the debt, Elliot Bay delivered a letter to Mr. Erickson:

> NOT HAVING HEARD FROM YOU ON THIS ACCOUNT, **LEGAL ACTION** IS NOW BEING CONSIDERED. TO AVOID PAYING ADDITIONAL COURT CHARGES AS WELL AS THIS AMOUNT, IMMEDIATELY SEND THE BALANCE **IN FULL** BY RETURN MAIL TO THE ABOVE ADDRESS.

---

[1] *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016).

[2] Neither party requested oral argument, and the court determines that oral argument would not be helpful here.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1  (*Id.* ¶ 21, Ex. A (emphasis in original).)  Elliot Bay admits that at least forty customers in

2  addition to Mr. Erickson received collection letters with identical language.  (Mot. Ex. B

3  at 6 (attaching Mr. Erickson's requests for admission and responses thereto).)  In fact, the

4  collection letter contains standard language included in letters to all of Elliot Bay's

5  costumers "on all types of accounts and on all types of amounts owed."  (*Id.*)  Although

6  Mr. Erickson's two claims on behalf of the class—Counts II and III—allege many other

7  FDCPA violations, Mr. Erickson seeks class certification solely on the basis of the March

8  17, 2015, collection letter.  (*See* Mot. at 1, 7.)  Mr. Erickson claims that the collection

9  letter violates the FDCPA by threatening "additional court charges . . . [f]alsely

10  representing that if payment [is] not made in full that court charges would automatically

11  be added to the balance of the alleged debt."  (*Id.* ¶¶ 26, 52, 53(e).)

12      On May 12, 2015, Elliot Bay sent a second letter to Mr. Erickson listing Mr.

13  Erickson's alleged debt in the categories of "Principal," "Interest," and "Misc./CC."  (*Id.*

14  ¶¶ 27-28; Answer ¶¶ 27-28.)  When Mr. Erickson's counsel contacted Elliot Bay about

15  the "Misc./CC" charge, Mr. Erickson claims that Elliot Bay explained that the charge,

16  totaling $283.00, represented $200.00 in attorney's fees and $83.00 in filing fees.  (*Id.*

17  ¶ 30.)  According to Mr. Erickson, Elliot Bay had no legal or contractual right to

18  attorney's fees.  (*Id.* ¶ 31.)

19      On June 5, 2015, Mr. Erickson notified Elliot Bay that he had retained counsel and

20  directed Elliot Bay not to contact him and to address all future communications regarding

21  the debt to his attorney.  (*Id.*, ¶¶ 33-34 (citing Exs. C, D).)  Nevertheless, Mr. Erickson

22  received a third collection letter on September 10, 2015.  (Compl. ¶ 37; Answer ¶ 37.)

1    This time, the collection letter listed Mr. Erickson's debts as $120.00 in "Principal,"

2    $61.32 in "Interest," and $323.00 in "Misc./CC."  (Compl. ¶ 39; Answer ¶ 39.)  Mr.

3    Erickson believes Elliot Bay did not have a legal or contractual right to charge $323.00 in

4    "Misc./CC" fees.  (Compl. ¶ 40.)  The third collection letter also stated:

5          IF YOU PAY THE ACCOUNT IN FULL AND ASK FOR DELETION FROM
      YOUR CREDIT FILE(S), WE WILL REQUEST DELETION ON YOUR
6          BEHALF.

7    (Compl. ¶ 41; *id.* Ex. E (emphasis in original); Answer ¶ 41.)  Mr. Erickson claims that

8    the third collection letter misleads by implying that Mr. Erickson could only clear his

9    credit report by asking Elliot Bay for deletion, when there are other avenues for removing

10   the debt from his report.  (Compl. ¶ 42.)

11         On September 3, 2015, and January 19, 2016, Elliot Bay reported Mr. Erickson's

12   debt to a credit bureau.  (*Id.* ¶ 35; Answer ¶ 35.)  Mr. Erickson alleges that Elliot Bay did

13   not notify the credit bureau that his debt was disputed, as required under the FDCPA.

14   (Compl. ¶ 36.)

15         On April 28, 2015, after six weeks of failed attempts to recover payment, Elliot

16   Bay filed a collection lawsuit against Mr. Erickson in Snohomish County District Court.

17   (Berggren Decl. (Dkt. # 15) ¶ 6, Ex. A.)  The collection lawsuit was eventually dismissed

18   after Elliot Bay made seven unsuccessful attempts to serve Mr. Erickson.  (*Id.* ¶¶ 10, 12.)

19         On March 16, 2016, Mr. Erickson filed a putative class action complaint alleging

20   that Elliot Bay violated certain provisions of the FDCPA as well as two Washington

21   statutes—the   Washington Collection Agency Act (WCAA), RCW ch. 19.16, and the

22   Washington Consumer Protection Act (CPA), RCW ch. 19.86.  (*See generally* Compl.)

1   Mr. Erickson asserts that the court has federal question jurisdiction over the FDCPA

2   claims and pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

3   (Compl. ¶ 2.)

4         On March 3, 2017, the court ordered Mr. Erickson to show cause why this action

5   should not be dismissed for lack of subject matter jurisdiction.  (Show Cause Order.)  The

6   court was concerned that Mr. Erickson failed to plead concrete harm, in support of the

7   injury-in-fact requirement of Article III standing.  (*See id.*) *see also Spokeo*, 136 S. Ct.

8   1540; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Mr. Erickson

9   submitted a memorandum in response to the court's order arguing that federal subject

10  matter jurisdiction exists under *Spokeo*.  (*See* Erickson Supp. Br.)  Elliot Bay also

11  submitted a memorandum, which contends there is no federal jurisdiction because Mr.

12  Erickson has solely alleged statutory violations, without alleging concrete harm.  (*See*

13  Elliot Bay Supp. Br.)

14                        **III.        ANALYSIS**

15  **A.    Standing**

16        Before deciding Mr. Erickson's motion for class certification, the court first must

17  be satisfied that Mr. Erickson has standing to bring his claims.  *Nelsen v. King Cty.*, 895

18  F.2d 1248, 1249-50 (9th Cir. 1990 ("Standing 'is a jurisdictional element that must be

19  satisfied prior to class certification.'") (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1322

20  (9th Cir. 1985)).  Accordingly, the court initially addresses standing and then turns to the

21  question of class certification.

22

1    1.  Legal Standard

2         Article III of the United States Constitution limits federal jurisdiction to the

3    resolution of cases and controversies.  *See* U.S. Const. art. III, § 2.  "[S]tanding is an

4    essential and unchanging part of the case-or-controversy requirement of Article III."

5    *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  In the absence of standing, the court

6    lacks subject matter jurisdiction and the suit must be dismissed under Federal Rule of

7    Civil Procedure 12(b)(1).  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004);

8    Fed. R. Civ. P. 12(b)(1).  The "irreducible constitutional minimum" of standing consists

9    of three elements:  (1) the plaintiff must have suffered an injury in fact, (2) that is fairly

10   traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

11   by a favorable judicial decision.  *Id*. at 560-61; *Friends of the Earth, Inc. v. Laidlaw*

12   *Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180-81 (2000).   With respect to the first

13   element, an injury in fact must be "(a) concrete and particularized . . . ; and (b) actual or

14   imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal citations and

15   quotations omitted).  The party invoking federal jurisdiction bears the burden of

16   establishing standing.  *Id*. at 561.  Plaintiffs must plead or prove, with the requisite

17   "degree of evidence required at the successive stages of the litigation," each element of

18   standing.  *Id*. at 561.

19        The Supreme Court recently revisited the principles of standing and the

20   injury-in-fact element in *Spokeo*, 136 S. Ct. 1540.  *Spokeo* involved a class action lawsuit

21   under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e, in which the plaintiff

22   sued a company for violating the FCRA's procedural requirements by allegedly

1    providing incorrect information about the plaintiff to the company's users.  *Id.* at 1545-

2    46.  The Ninth Circuit held that the plaintiff's injury "satisfied the injury-in-fact

3    requirement of Article III" because the defendant "violated [the plaintiff's] statutory

4    rights, not just the statutory rights of other people."  *Id.*  The Supreme Court reversed,

5    finding that the Ninth Circuit erred by focusing the injury-in-fact inquiry solely on

6    whether the plaintiff's injury was particularized while omitting any analysis of

7    concreteness.  *Id.* at 1550.

8           The Supreme Court emphasized that to be concrete, an injury "must be 'de facto';

9    that is, it must actually exist."  *Id.* at 1548.  However, "concrete" does not necessarily

10   mean "tangible."  *Id.* at 1549.  An intangible harm, such as the loss of one's right to free

11   speech or to religious practice, can constitute a concrete injury.  *Id.* (citing *Pleasant*

12   *Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu*

13   *Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)).  Indeed, "Congress may

14   'elevat[e] to the status of legally cognizable injuries, de facto injuries that were

15   previously inadequate in law.'"  *Id.* (alteration in original) (quoting *Lujan*, 504 U.S. at

16   578).  Nevertheless, a plaintiff does not "automatically satisf[y] the injury-in-fact

17   requirement whenever a statute grants a person a statutory right and purports to authorize

18   that person to sue to vindicate that right."  *Id.*  "Article III standing requires a concrete

19   injury even in the context of a statutory violation."  *Id.*  A plaintiff may not "allege a bare

20   procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact

21   requirement of Article III."  *Id.*

22

1    In certain circumstances, "the risk of real harm" can also be enough to satisfy the

2    concreteness requirement. *Spokeo*, 136 S. Ct. at 1543-44. For example, the Supreme

3    Court noted that harms associated with certain torts can be difficult to prove or measure.

4    *Id*. (citing libel and slander as examples). Thus, the Court acknowledged that in some

5    circumstances the violation of a statutory procedural right could constitute an injury in

6    fact, and in such cases, the plaintiff need not allege any additional harm beyond the harm

7    Congress had identified. *Id*. at 1549-50. In so ruling, the Supreme Court cited two prior

8    cases involving informational injuries. *Id*. (citing *Fed. Election Comm'n v. Akins*, 524

9    U.S. 11, 20-25 (1998) (confirming that a group of voters' "inability to obtain

10   information" that Congress had decided to make public was a sufficient injury in fact to

11   satisfy Article III); *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) (holding

12   that two advocacy organizations' failure to obtain information subject to disclosure under

13   the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide

14   standing to sue")).

15       2.   <u>Mr. Erickson's Article III Standing</u>

16       To analyze whether the harm Mr. Erickson alleged is sufficiently concrete, the

17   court begins with the nature of the rights conferred by the various provisions of Sections

18   1692 of the FDCPA.[3] "To determine whether an intangible harm constitutes injury in

19   fact, both history and the judgment of Congress are instructive." *Spokeo*, 136 S. Ct. at

20

21   ───────────────────

22       [3] The court does not have cause to question whether Mr. Erickson's allegations establish
     the other necessary elements of standing: that his injury is fairly traceable to Elliot Bay's conduct
     and likely to be redressed by a favorable judicial decision. *See Lujan*, 504 U.S. at 560-61.

1543.  Congress enacted the FDCPA in order "to eliminate abusive debt collection

practices by debt collectors."  15 U.S.C. § 1692(e).  "'The statute seeks 'to protect

consumers from a host of unfair, harassing, and deceptive debt collection practices.'"

*Jackson*, 2016 WL 4942074, at *9 (quoting S. Rep. No. 95-382, at 1 (1977), *as reprinted

in* 1977 U.S.C.C.A.N. 1695).  "[T]he harms resulting from abusive debt collection

practices are closely related to harms that traditionally provided a basis for relief in

American and English courts, such as fraud."  *Id.* (citing *S. Dev. Co. v. Silva*, 125 U.S.

247, 250 (1888) (defining the legal elements of a civil fraud); *Pasley v. Freeman* (1789)

100 Eng. Rep. 450 (K.B.) 450 ("A false affirmation, made by the defendant with the

intent to defraud the plaintiff, whereby the plaintiff receives damage, is the ground of an

action upon the case in the nature of deceit."); Restatement (Second) of Torts § 525

(1977) (discussing fraudulent misrepresentation)).

Thus, under the FDCPA, consumers have a right to be free from debt collector

abuse, and the statute mandates various procedures to accomplish this goal and decrease

the risk of harm related to these practices.  In general, each of these procedures helps to

prevent abusive practices, but "this does not mean their violation automatically amounts

to the injury identified by Congress in the statute."  *Id.*; *Spokeo*, 136 S. Ct. at 1550 ("A

violation of one of [a federal statute's] procedural requirements may result in no harm.").

//

//

//

//

ORDER- 9

1    Mr. Erickson's federal claims are based on allegations that Elliot Bay violated

2 three provisions of the FDCPA, Sections 1692c, e-f.  The court reviews each of Mr.

3 Erickson's FDCPA claims in turn.[4]

4         a.  Count I, Section 1692c

5    In count one of his complaint, Mr. Erickson asserts a claim under Section

6 1692c(a)(2) of the FDCPA, alleging that Elliot Bay sent him a collection letter after he

7 informed the company that he was represented by an attorney.  (Compl. ¶¶ 37-38.)

8 Section 1692c(a)(2) "states that a debt collector may not communicate with a consumer,

9 in connection with the collection of any debt, if the debt collector knows that the

10 consumer is represented by counsel." *Bravo v. Midland Credit Mgmt., Inc*., 812 F.3d

11 599, 602 (7th Cir. 2016); 15 U.S.C. § 1692c(a)(2).  "The rationale behind this rule is

12 clear.  Unsophisticated consumers are easily bullied and misled.  Trained attorneys are

13 not." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 935 (9th Cir. 2007).  Mr.

14 Erickson alleges that he received and read the collection letter Elliot Bay sent after the

15 company allegedly knew that Mr. Erickson was represented.  (Compl. ¶¶ 37-38.)

16 Consequently, Mr. Erickson encountered the very risk of harm Congress sought to

17 prevent with the enactment of Section 1692c.  (*Id*.)  As Mr. Erickson correctly notes,

18 violation of Section 1692c "harms the consumer by interfering with the client-attorney

19 ───────────────────

20     [4] It is well established that "a plaintiff must demonstrate standing for each claim [s]he
seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006).  Thus, with respect
21 to each asserted claim, "[a] plaintiff must always have suffered a distinct and palpable injury to
[her]self." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (internal quotation
22 marks omitted).

1    relationship[,] undermining the attorney's authority as the consumer's

2    representative . . . and can result in the inadvertent and uncounseled disclosure of

3    information, to the debtor's detriment." (Erickson Supp. Br. at 7.)  Accordingly, the

4    court finds that Mr. Erickson has plausibly alleged a concrete injury under count one of

5    his Complaint.

6        *b.  Counts II and III, Section 1692e-f*

7            In counts two and three, Mr. Erickson contends that Elliot Bay violated Sections

8    1692e-f of the FDCPA by (1) making false representations as to the amount of debt Mr.

9    Erickson owed (Compl. ¶¶ 53(a-b)), (2) communicating credit information to credit

10   bureaus while failing to communicate that Mr. Erickson's debt was disputed (*id.* ¶ 53(d)),

11   (3) falsely representing that if Mr. Erickson did not pay in full, charges would

12   automatically be added to the balance of the alleged debt (*id.* ¶ 53(e)), (4) falsely

13   representing that Mr. Erickson could not request deletion of the items on his credit card

14   until he paid the account in full (*id.* ¶ 53(f)), and (5) charging $200.00 in attorney's fees

15   and $323.00 in other fees that "were not expressly permitted by the agreement creating

16   the debt or permitted by law" (*id.* ¶¶ 58-59).  With the exception of the second

17   allegation—that Elliot Bay communicated Mr. Erickson's debt to credit bureaus without

18   notifying the bureaus that the debt was disputed[5]—counts two and three refer to the

19   allegedly misleading statements contained in Elliot Bay's collection letters.

20   

21            [5] Mr. Erickson's complaint fails to allege that he disputed his debt within 30 days of
     receiving the debt notice as required by Section 1692(g)(a)(3) of the FDCPA.  Instead, Mr.

22   Erickson urges the court to adopt the reasoning of *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418

1    Sections 1692e-f confer separate but similar rights.  Section 1692e of the FDCPA

2    prohibits "[t]he false representation of (A) the character, amount, or legal status of any

3    debt; or (B) any services rendered or compensation which may be lawfully received by

4    any debt collector for the collection of a debt," and, more generally, "[t]he use of any

5    false representation or deceptive means to collect or attempt to collect any debt or to

6    obtain information concerning a consumer."  15 U.S.C. §§ 1692e(2), (10).  Section 1692f

7    prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or

8    attempt to collect any debt."  *Id.* § 1692f.

9    Mr. Erickson sufficiently alleges that he suffered concrete harm as a result of

10   Elliot Bay's violations of Sections 1692e-f.[6]  In support of this claim, Mr. Erickson

---

12   (8th Cir. 2008), and *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1189 (10th Cir.

13   2013), both of which held that a creditor has no affirmative duty to report that a debt is disputed.
     The cases Mr. Erickson cites do not support his argument that he suffered an injury based on
     Elliot Bay's failure to communicate that his debt was disputed despite the fact that he failed to

14   timely dispute the debt.  Nevertheless, because Mr. Erickson sufficiently alleged an injury-in-fact
     elsewhere in his complaint, the court declines to address this issue here.

15

16   [6] Courts are split on whether merely alleging statutory violations under Sections 1692e-f
     of the FDCPA, without further allegations of harm, is sufficient to confer Article III standing.
     *Compare*, *Bautz v. ARS Nat'l Servs., Inc*., No. 16-CV-768JFBSIL, 2016 WL 7422301, at *9-10

17   (E.D.N.Y. Dec. 23, 2016) (finding alleged violations of sections 1692e-f constitute a concrete
     injury sufficient for Article III standing); *Bernal v. NRA Grp., LLC*, No. 16 C 1904, 2016 WL

18   4530321, at *4-5 (N.D. Ill. Aug. 30, 2016) (same), *with Tourgeman v. Collins Fin. Servs., Inc*.,
     197 F. Supp. 3d 1205, 1209 (S.D. Cal. 2016) (finding no standing where the plaintiff could not
     establish a specific harm had resulted from an alleged violation of 15 U.S.C. § 1692e); *see also*

19   *May v. Consumer Adjustment Co., Inc*., No. 4:14CV166 HEA, 2017 WL 227964, at *3 (E.D.
     Mo. Jan. 19, 2017) (same); *Horowitz v. GC Servs. Ltd. P'ship*, 14CV2512-MMA RBB, 2016 WL

20   7188238, at *7 (S.D. Cal. Dec. 12, 2016) (finding no Article III standing for plaintiff's Section
     1692f claim where the plaintiff failed to plead harm in addition to the statutory violation).

21   Because Mr. Erickson has alleged injuries in addition to statutory violations, the court need not
     decide whether allegations that Elliot Bay violated Sections 1692e-f, without more, would be

22   sufficient for Article III standing.

1   alleges that his counsel called Elliot Bay on his behalf to dispute the charges—a call Mr.

2   Erickson likely would not have made if the collection letters were accurate.  (Compl.

3   ¶¶ 29-30.)  Because he was compelled to make this call, Mr. Erickson has plausibly

4   alleged concrete harm for purposes of Article III standing.  *See Horowitz*, 2016 WL

5   7188238, at *5 (time spent returning calls from a collection agency constituted concrete

6   harm in satisfaction of Article III standing).

7          In reference to his third claim, under Section 1692f of the FDCPA, Mr. Erickson

8   argues that Elliot Bay reported inflated debt to credit bureaus, to the detriment of Mr.

9   Erickson's credit.[7]  (Erickson Supp. Br. at 9, Ex. C.)  In support of this argument, Mr.

10  Erickson submits a copy of his credit report, which indicates that the allegedly inflated

11  debt listed in Elliot Bay's collection letters was reported to two credit bureaus, Experian

12  and Equifax.  (*Id.*, Ex. C at 2-3.)  The damage to Mr. Erickson's credit as a result of this

13  allegedly inflated reporting constitutes a concrete injury-in-fact for purposes of Article III

14  standing.[8]

15  _____

16          [7] Mr. Erickson makes this allegation for the first time in his supplemental briefing.  (*See*

17  *generally* Compl.)  "When considering a motion to dismiss for lack of jurisdiction, unlike when
    deciding a motion to dismiss under Rule 12(b)(6), the court 'is not limited to the allegations of
    the complaint.'"  *Friends of Animals v. Ashe*, 174 F. Supp. 3d 20, 27 (D.D.C. 2016) (quoting

18  *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds*, 482 U.S.
    64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987).  "Rather, 'a court may consider such materials outside

19  the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to
    hear the case.'"  *Id.* (quoting *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22

20  (D.D.C. 2000)).  Accordingly, the court will consider the additional evidence Mr. Erickson
    submitted in support of his supplemental briefing.

21          [8] The court also has supplemental jurisdiction over Mr. Erickson's state law claims.  In

22  count four of his complaint, Mr. Erickson alleges that Elliot Bay violated the Washington
    Collection Agency Act, RCW ch. 19.16, by "falsely and deceptively implying that the only way

1  **B.     Mr. Erickson's Motion for Class Certification**

2         Having found that Mr. Erickson has Article III standing to pursue his claims, the

3  court now turns to Mr. Erickson's motion for class certification.[9]

4         1.   Standard for Class Certification

5         "Class certification is governed by Federal Rule of Civil Procedure 23."

6  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Under Rule 23(a), the party

7  seeking certification must first demonstrate that "(1) the class is so numerous that joinder

8

9  _____

10  [Mr. Erickson] could avoid paying additional court charges was to send payment in full."
   (Compl. ¶ 67.)  In count five, Mr. Erickson alleges that Elliot Bay violated the Washington
   Consumer Protection Act, RCW ch. 19.86.  (Compl. ¶ 75.)

11         The Ninth Circuit established the following test to determine whether pendant
   jurisdiction exists:

12

13         Pendant jurisdiction exists where there is a sufficiently substantial federal claim to
          confer federal jurisdiction in the first place, and a 'common nucleus of operative
          fact' between the state and federal claims.

14

15  *In Re Nucorp Energy Sec. Litig.*, 772 F.2d 1486 (9th Cir. 1985) (quoting *United Mine Workers v.
   Gibbs*, 383 U.S. 715, 725 (1966)); *see also* 28 U.S.C. § 1367.  As discussed above, the court has
   original jurisdiction over Mr. Erickson's FDCPA claims.  *See supra* § III.A.2.  Mr. Erickson's

16  state law claims arise out of the 'same nucleus of operative facts,' because these claims are based
   on the same factual allegations cited in support of Mr. Erickson's FDCPA claims.  (*Compare*
   Compl.  ¶ 53(e)), *with* Compl. ¶¶ 67, 75.)  Accordingly, the court has supplemental jurisdiction

17  over Mr. Erickson's state law claims.

18         [9] Because Mr. Erickson has demonstrated standing, the court is satisfied that the class
   also has standing.  *See, e.g.*, *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)

19  (en banc) ("In a class action, standing is satisfied if at least one named plaintiff meets the
   requirements."); *see also Lewis v. Casey*, 518 U.S. 343, 395 (1996) ("[Unnamed plaintiffs] need

20  not make any individual showing of standing [in order to obtain relief], because the standing
   issue focuses on whether the plaintiff is properly before the court, not whether represented

21  parties or absent class members are properly before the court.") (internal quotation marks and
   citation omitted); *Larson v. Trans Union, LLC*, 201 F. Supp. 3d 1103, 1109 (N.D. Cal. 2016)

22  ("Larson's showing of standing for himself is sufficient to establish standing for the class as a
   whole.").

1   of all members is impracticable; (2) there are questions of law or fact common to the

2   class; (3) the claims or defenses of the representative parties are typical of the claims or

3   defenses of the class; and (4) the representative parties will fairly and adequately protect

4   the interests of the class." Fed. R. Civ. P. 23(a). "Second, the proposed class must

5   satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at

6   345; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Here, Mr.

7   Erickson seeks to certify a class under Rule 23(b)(3), which requires the court to find

8   "that the questions of law or fact common to class members predominate over any

9   questions affecting only individual members, and that a class action is superior to other

10  available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

11  23(b)(3).

12       Rule 23 "does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 360.

13  Rather, "certification is proper only if the trial court is satisfied, after a rigorous analysis,

14  that the prerequisites of Rule 23(a) have been satisfied." *Id*. at 350-51 (internal quotation

15  omitted). "[I]t may be necessary for the court to probe behind the pleadings before

16  coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

17  147, 160 (1982). This is because "the class determination generally involves

18  considerations that are enmeshed in the factual and legal issues comprising the plaintiff's

19  cause of action." *Id*. (internal quotation omitted). Nonetheless, the ultimate decision

20  regarding class certification "involve[s] a significant element of discretion." *Yokoyama

21  v. Midland Nat'l Life Ins. Co*., 594 F.3d 1087, 1090 (9th Cir. 2010).

22

ORDER- 15

2.  Mr. Erickson's Proposed Class

Mr. Erickson moves to certify the following class:

> All Washington consumers who were sent collection letters and/or notices from the Defendant attempting to collect an alleged debt that contains at least one of the alleged violations arising from Defendant's violation of 15 U.S.C. § 1692 *et seq.*

(Comp. ¶ 11; Mot. at 5.)  The court may certify a class only if:  (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").  Fed. R. Civ. P. 23(a); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).  The court must conduct a "rigorous analysis" to determine if the prerequisites of Rule 23(a) are satisfied.  *Id.*; *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (per curiam).

In addition to meeting the Rule 23(a) prerequisites, the party seeking class certification must also fall into one of three categories under Rule 23(b).  *Dukes*, 564 U.S. at 344; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Mr. Erickson seeks certification pursuant to Rule 23(b)(3) only.[10]  (*See* Mot. at 11-14.) Certification is appropriate under Rule 23(b)(3) where the "court finds that the questions of law or fact common to class members predominate over any questions affecting only

_____

[10] The parties agree that Rule 23(b)(3) is the only applicable category for class certification here.  (*See* Mot. at 6-7; *see generally* Resp.)

ORDER- 16

1    individual members, and that a class action is superior to other available methods for

2    fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

3         The court now turns to the class certification factors.

4         3.   Rule 23(a) Certification

5         The parties apparently agree that Mr. Erickson has established numerosity, which

6    requires Mr. Erickson to show that "the class is so numerous that joinder of all members

7    is impracticable."  Fed. R. Civ. P. 23(a)(1); (Mot. at 6-7; *see generally* Resp.)   The

8    proposed class consists of more than forty consumers who received a collection letter

9    with nearly identical language to the one Mr. Erickson received.  (Mot. at 7; Compl., Ex.

10   B at 6.)   The other elements of Rule 23(a)—commonality, typicality, and adequacy—are

11   disputed.

12        a.   Commonality

13        "Commonality exists where class members' situations share a common issue of

14   law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all

15   claims for relief."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th

16   Cir. 2010) (citation and quotations omitted).  "The existence of shared legal issues with

17   divergent factual predicates is sufficient, as is a common core of salient facts coupled

18   with disparate legal remedies within the class."  *Id.*  "Commonality requires the plaintiff

19   to demonstrate that the class members 'have suffered the same injury'. . . . This does not

20   mean merely that they have all suffered a violation of the same provision of law."

21   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (quoting *Gen. Tel. Co. of Sw. v.*

22   *Falcon*, 457 U.S. 147, 161 (1982)); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d

1015, 1029 (9th Cir. 2012).  "'[T]he commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members.'"  *Reese v. CNH Am., LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005) (quoting *Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410, 422 (6th Cir.1998)).

Mr. Erickson contends that commonality is met because "the common injury complained of is a form boilerplate letter which failed to comply with the FDCPA."[11] (Mot. at 7.)  Specifically, Mr. Erickson argues that Elliot Bay's boilerplate collection letters violate certain subsections of the FDCPA, which prohibit debt collectors from threatening to take "any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5), and using any "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id*. § 1692e(10).  Elliot Bay counters that determining class status will be too difficult and time-consuming due to Elliot Bay's "unique defenses," which are based on "independent and separate" agreements between Mr. Erickson and his original creditor, FHC, and between FHC and Elliot Bay.  (Resp. at 6-7.)  In addition, Elliot Bay intends to assert defenses based on Mr. Erickson's refusal to accept service in the collection lawsuit.  (*Id*.)

_____

[11] In addition to the principle stated above, that class members are not required to individually demonstrate standing, the court notes that the statutory standing inquiry differs from the inquiry required to determine whether there is Article III standing.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998) (emphasis in original) (The "issue of *statutory* standing . . . has nothing to do with whether there is case or controversy under Article III"); *see also Ortiz v. Fibreboard Corp*., 527 U.S. 815, 831 (1999) (discussing analysis of Article III standing and statutory standing as distinct inquiries); *Kootenai Envtl. All. v. U.S. Army Corps of Engineers*, C11-2040 RSM, 2012 WL 5511646, at *4 (W.D. Wash. Nov. 14, 2012) (same).  In the present case, this means that the court does not apply the Article III injury-in-fact analysis to Mr. Erickson's allegations of a statutory violation under Sections 1692e(5), (10) of the FDCPA.

In order to resolve Mr. Erickson's class claims, the court must determine whether the collection letters (1) included misleading statements or (2) threatened any action that cannot be taken pursuant to the agreements or the law.  15 U.S.C. §§ 1692e-f.  Elliot Bay's defenses do not address the first of these inquiries, whether the form letters included misleading statements.  In the Ninth Circuit, a violation of Section 1692e of the FDCPA is measured by an objective standard:

> We apply the "least sophisticated debtor" standard to these allegations. [citation omitted]  For example, we shall find a violation of Section 1692e if [defendant's] letter and telephone call are likely to deceive or mislead a hypothetical "least sophisticated debtor."

*Id*. at 1146 (quoting *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir.1996)). "[A] debt collector's liability under § 1692e of the FDCPA is an issue of law." *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir.1997); *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011).  Because at least one issue presented by Mr. Erickson's class certification is common to the class—at least forty consumers received collection letters with the same allegedly misleading language (Compl. Ex. B at 6)—and can be resolved, as a matter of law, simply by reference to the collection letter, Mr. Erickson has demonstrated commonality.  *See Gold v. Midland Credit Mgmt., Inc*., 306 F.R.D. 623, 631 (N.D. Cal. 2014) (quoting *Gonzales*, 660 F.3d at 1061) ("Ultimately, because 'a debt collector's liability under § 1692e of the FDCPA is an issue of law,' the Court's resolution of the issue of liability will generate a dispositive common answer in this action."); *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 445 (D.N.M. 2007) ("The

1  Plaintiff must establish that at least a single issue is common to all members in the

2  class.").[12]

3       b.  *Typicality*

4       In addressing the typicality requirement, the court analyzes "whether other

5  members have the same or similar injury, whether the action is based on conduct which is

6  not unique to the named plaintiffs, and whether other class members have been injured by

7  the same course of conduct." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir.

8  1992); Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure

9  that the interest of the named representative aligns with the interests of the class." *Id*.  A

10  plaintiff demonstrates typicality "when each class member's claim arises from the same

11  course of events, and each class member makes similar legal arguments to prove the

12  defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

13  Individual defenses applicable to the proposed class representative do not preclude a

_____

15       [12] "[S]imilar classes have repeatedly been certified because class claims arose out of a
16  debt collector's uniform approach to demanding payment of fees not authorized by law or
    agreement and accordingly raised the same dispositive legal issues." *Darrington v. Assessment
17  Recovery of Wash.*, LLC, No. C13-0286-JCC, 2013 WL 12107633, at *3 (W.D. Wash. Nov. 13,
    2013) (citing *Annunziato v. Collecto, Inc*., 293 F.R.D. 329 (E.D.N.Y. Aug. 9, 2013) (certifying
18  FDCPA class action against debt collector who sent collection letters demanding payment of
    collection fees not yet incurred by creditor or collection agency); *Butto v. Collecto, Inc*., 290
19  F.R.D. 372 (E.D.N.Y. 2013) (certifying FDCPA class action against debt collector which
    attempted to collect unearned collection fees); *Mund v. EMCC, Inc*., 259 F.R.D. 180, 184-85 (D.
20  Minn. 2009) (certifying FDCPA class action in similar debt-collection scheme and explaining
    that the commonality requirement was satisfied where class members were sent nearly identical
21  collection letters instructing them to pay costs that were not authorized by their agreements with
    creditors); *Hansen v. Ticket Track, Inc*., 213 F.R.D. 412, 414-15 (W.D. Wash. 2003) (certifying
    FDCPA and WCAA class action against collection agency where "[a]ll claims stem[med] from
22  the same alleged conduct by [the collection agency]" in seeking to collect more than the
    underlying debt)).

1    finding of typicality unless there is a danger that absent class members will suffer if their

2    representative is preoccupied with defenses unique to it.  *Hanon*, 976 F.2d at 508;

3    Fed.R.Civ.P. 23(a)(3).

4            Elliot Bay argues that Mr. Erickson does not meet the typicality requirement

5    because he is subject to the defenses described above—defenses related to the agreements

6    between Mr. Erikson and FHC and between Elliot Bay and FHC, as well as Mr.

7    Erickson's refusal to accept service in the collection lawsuit—which are not typical of the

8    proposed class.  (Resp. at 6.)  In demonstrating that a presumptive lead plaintiff is subject

9    to a unique defense, the party opposing the presumptive lead plaintiff need "only to show

10   a degree of likelihood that a unique defense might play a significant role at trial."  *In re*

11   *CTI Biopharma Corp. Sec. Litig*., No. C16-0216RSL, 2016 WL 7805876, at *2 (W.D.

12   Wash. Sept. 2, 2016) (internal quotation marks omitted).  A speculative defense "is

13   insufficient to rebut the presumption" that the presumptive lead plaintiff "satisfies the

14   adequacy and typicality requirements."  *Cook v. Atossa Genetics, Inc*., No.

15   C13-1836RSM, 2014 WL 585870, at *5 (W.D. Wash. Feb. 14, 2014).  Elliot Bay asserts

16   that a review of the agreements between class members and their initial creditors will be

17   required presumably because the FDCPA permits actions that can legally be taken under

18   the terms of the original agreement.  15 U.S.C. § 1692e(5).  The court is not persuaded.

19   Elliot Bay has not described how the agreements support a defense of the language used

20   in the collection letters; nor has Elliot Bay cited any case law supporting the proposition

21   that the court should deny class certification based on the consumer's original agreements

22   with their service provider.  Accordingly, Elliot Bay's defenses are too speculative to

1  rebut the presumption that Mr. Erickson satisfies the typicality requirement.  *Cook*, 2014

2  WL 585870, at *5.

3         *c.  Adequacy*

4       Rule 23(a)(4) requires Mr. Erickson to demonstrate (1) that the proposed

5  representative plaintiffs and their counsel do not have any conflicts of interest with the

6  proposed class; and (2) that the named plaintiffs and their counsel will prosecute the

7  action vigorously on behalf of the class.  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020

8  (9th Cir. 1998).

9       Mr. Erickson asserts that he has no interests in conflict with those of the putative

10  class members.  (Mot. at 10.)  Mr. Erickson also argues that there is "zero reason to

11  believe that there is any risk of collusion between [Mr. Erickson] and the proposed class

12  counsel, who share no sort of relationship outside of the instant litigation."  (*Id.*)  Further,

13  Elliot Bay has not challenged the ability of Mr. Erickson to prosecute this action

14  vigorously on behalf of the class.  (*See generally* Resp.)  For these reasons, Mr. Erickson

15  makes a *prima facie* showing that he satisfies Rule 23's adequacy requirement.

16       Nevertheless, Elliot Bay reiterates the defenses asserted above, arguing in this case

17  that the proposed class counsel is not adequate because counsel refused service in the

18  collection litigation and denied representing Mr. Erickson.  (*Id.*)  Mr. Erickson counters

19  that Elliot Bay's "improper collection letters violated the FDCPA regardless of legal

20  counsel's conduct in accepting service for any underlying collection lawsuit."  (Reply at

21  2.)  The court relies on its reasoning stated above addressing Defendants' arguments

22  concerning those issues.  *See supra* §§ III.B.3(a)-(b).  Because Mr. Erickson seeks to

1    represent the class in reference to the collection letters, each sent long before the

2    collection lawsuit, Elliot Bay's proposed defenses do not preclude Mr. Erickson's pursuit

3    of the class claims.  Finally, Elliot Bay argues that the proposed class counsel is not an

4    adequate representative because counsel lacks experience in FDCPA class actions.

5    (Resp. at 9.)   This argument is disproven by the record.  (*See* Marcus Decl. (Dkt. # 11)

6    ¶ 6(a) ("I have been plaintiff's counsel in over two hundred (200) Fair Debt Collection

7    Practices Act cases in the States of New York and New Jersey."); *see also* Pesicka Decl.

8    (Dkt. # 11) ¶ 6(a) ("I am plaintiff's counsel on several Fair Debt Collection Practices Act

9    cases in the State of Washington").)

10        4.  Rule 23(b)(3) Certification

11        Having found that Mr. Erickson meets the Rule 23(a) requirements, the court now

12   turns to the criteria under Rule 23(b)(3), predominance and superiority.

13        *a. Predominance*

14        The predominance inquiry under Rule 23(b)(3) "tests whether proposed classes are

15   sufficiently cohesive to warrant adjudication by representation."  *Darrington*, 2013 WL

16   12107633, at *5  (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997);

17   *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013)).  This inquiry

18   presumes the existence of common factual or legal issues required under Rule 23(a)'s

19   "commonality" element, focusing instead "on the relationship between the common and

20   individual issues."  *Hanlon*, 150 F.3d at 1023; *see Comcast Corp. v. Behrend*, --- U.S. ---,

21   133 S. Ct. 1426, 1432 (2013) ("[the] predominance criterion is even more demanding

22   than Rule 23(a)").  "When common questions present a significant aspect of the case and

ORDER- 23

1   they can be resolved for all members of the class in a single adjudication, there is a clear

2   justification for handling the dispute on a representative rather than on an individual

3   basis." *Hanlon*, 150 F.3d at 1023 (quotation omitted).  Under Rule 23(b)(3), the court

4   must find that "the questions of law or fact common to class members predominate over

5   any questions affecting only individual members, and that a class action is superior to

6   other available methods for fairly and efficiently adjudicating the controversy."  Fed. R.

7   Civ. P. 23(b)(3).

8       Mr. Erickson seeks to certify a class of Washington consumers who were sent

9   collection letters that were either misleading or threatened impermissible action, in

10  violation of Sections 1692e(5) and (10) of the FDCPA.   This dispositive liability issue

11  underpins every class member's claim and is, in the court's view, sufficient by itself to

12  demonstrate predominance over individual issues.  To further support this conclusion, the

13  court addresses the elements of Mr. Erickson's claims.

14      To demonstrate an FDCPA violation, Mr. Erickson will have to establish that (1)

15  the class members are consumers; (2) that the "debt" arose out of a transaction primarily

16  for personal, family, or household purposes; (3) that Elliot Bay is a "debt collector" that

17  uses the mails or instrumentalities of interstate commerce to regularly collect debts owed;

18  and (4) Elliot Bay threatened to take "action that cannot legally be taken or that is not

19  intended to be taken," and/or used "false representation or deceptive means to collect or

20  attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C.

21  §§1692 e(5), (10); *Darrington*, 2013 WL 12107633, at *6.  Mr. Erickson's claims are

22  centered on a form letter that—by the terms of the class definition (Mot. at 5)—Elliot

Bay sent to all members of the class.  Thus, the elements of these claims are uniform

amongst the class members such that individual rulings with regard to the absentee class

members' claims are unnecessary.  *Darrington*, 2013 WL 12107633, at *6 ("The ability

to adjudicate nearly all elements of Plaintiffs' claims in a class action demonstrates that

the common factual and legal issues overwhelmingly predominate.").

Notwithstanding the significant commonalities, Elliot Bay argues that numerous

individual issues will predominate the analysis of class members' claims.  (Resp. at

10-11.)  Elliot Bay asserts that its' proposed individual defenses, described above, *see*

*supra*§§ III.B.3(a)-(c), require individual inquiry into issues of contract differences,

retention of counsel, and refusal of service.  (Resp. at 10.)  Elliot Bay neither discusses

these proposed defenses in detail nor cites cases in which this "individual inquiry" has

foreclosed class certification.  This leaves the court hard pressed to find Elliot Bay's

threatened defenses to be an impediment to certifying the class.  Ultimately, the court's

determination of whether Elliot Bay's form collection letters contained impermissible

statements under Sections 1692e(5) and (10) of the FDCPA will generate a dispositive

common answer in this action.  *Gold v. Midland Credit Mgmt., Inc*., 306 F.R.D. 623, 631

(N.D. Cal. 2014).  Accordingly, the court concludes that the issue presented by the class

predominates over individual questions that may arise in this action.

> *b.  Superiority*

Rule 23(b)(3) also requires the court to find that a "class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b)(3).  When undertaking this inquiry, the court considers (1) the interest of

1  individuals within the class in controlling their own litigation; (2) the extent and nature of

2  any pending litigation commenced by or against the class involving the same issues; (3)

3  the convenience and desirability of concentrating the litigation in a particular forum; and

4  (4) the manageability of the class action.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D); *Zinzer v.*

5  *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).  Consideration of these

6  factors must "focus on the efficiency and economy elements of the class action so that

7  cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably

8  on a representative basis." *Zinzer*, 253 F.3d at 1190.

9         Mr. Erickson's proposed class meets the requirements of superiority.  As

10  discussed above, disposing of the central issue in the class action—whether Elliot Bay's

11  form collection letters included impermissible language under Sections 1692e(5) and (10)

12  of the FDCPA—generates a common answer and therefore facilitates efficient resolution

13  of the proposed class plaintiffs' claims.  *See supra* §§ III.B.3(a)-(c).  Further, the

14  superiority element is satisfied in cases like this, where individual class members have

15  little incentive to pursue individual claims given the limited financial recovery that is

16  available.[13]  *Annunziato*, 293 F.R.D. at 340; *see also Darrington*, 2013 WL 12107633, at

17  *8 ("Each putative class member here suffered a relatively small financial penalty and

18  stands to recover minimal statutory damages which, as a practical matter, makes it

19  unrealistic to believe that they will pursue such claims on an individual basis.")

20

21  _____

22      [13] In individual FDCPA actions, damages are limited to actual damages and "such
    additional damages as the court may allow, but not exceeding $1,000[.00]."  15 U.S.C. § 1692k.

1    Elliot Bay argues that Mr. Erickson cannot demonstrate superiority because the

2    proposed class is not ascertainable.  (Resp. at 11.)  In particular, Elliot Bay contends the

3    proposed class would be too difficult to administer because in order to determine whether

4    any particular consumer qualified as a member of the class, "the [c]ourt would have to

5    conduct a factual inquiry into each individual's agreement and whether it authorized

6    certain fees or charges with their respective creditor."  (*Id.*)  The Ninth Circuit's recent

7    holding in *Briseno v. ConAgra Foods*, 844 F.3d 1121 (9th Cir. 2017), forecloses Elliot

8    Bay's argument that Mr. Erickson must demonstrate that the class is administratively

9    feasible.  *Briseno*, 844 F.3d at 1123 ("A separate administrative feasibility prerequisite to

10   class certification is not compatible with the language of Rule 23.").

11            i.   Class Definition

12   While Mr. Erickson is not required to satisfy a separate administrative feasibility

13   requirement, the court nevertheless must consider the likely difficulties in managing a

14   class action in order to ensure the "efficiencies Rule 23(b)(3) was designed to achieve."

15   *Id*. at 1127.  To that end, an efficient class action begins with a class definition that

16   describes "a set of common characteristics sufficient to allow a prospective plaintiff to

17   identify himself or herself as having a right to recover based on the description."

18   *Kristensen v. Credit Payment Servs*., 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014).  Class

19   membership "must be determinable from objective, rather than subjective, criteria."  *Id*.

20   In light of these requirements, the court finds that Mr. Erickson's proposed class

21   definition is overbroad because it (1) refers to a proposed class that may not have read the

22   allegedly offending collection letters, (2) requires reference to the complaint to

1  understand the scope of the class, and (3) does not specify a time period for the proposed

2  class, which means the definition is not limited to class members who come within the

3  applicable statute of limitation.

4        First, Mr. Erickson's proposed class definition refers to consumers who were "sent

5  collection letters," a definition that includes customers who have not read, seen, or even

6  received the collection letters—whether because they were lost in the mail or otherwise—

7  and therefore could neither have been threatened with action that cannot legally be taken

8  nor misled under the applicable provisions of the FDCPA.  15 U.S.C. § 1692e(5), (10).

9  Courts consistently decline to certify class definitions that encompass members who are

10 not entitled to bring suit under the applicable substantive law.  *See Wolph v. Acer Am.*

11 *Corp.*, 272 F.R.D. 477, 483 (N.D. Cal. 2011) (declining to certify a proposed class on the

12 basis that the "proposed class of 'all persons and entities' who purchased [a defendant's]

13 notebook . . . is too broad because it includes consumers who already received their

14 remedy by returning the notebook for a full refund"); *Hovsepian v. Apple, Inc*., No.

15 08-5788 JF (PVT), 2009 WL 5069144, at *6 (N.D. Cal. Dec.17, 2009) ("[T]he class is

16 not ascertainable because it includes members who have not experienced any problems

17 with [the product at issue]."); *Rasmussen v. Apple Inc*., No. C-13-4923 EMC, 2014 WL

18 1047091, at *12 (N.D. Cal. Mar. 14, 2014) ("[T]he definition is overbroad as it includes

19 within the class individuals who have not experienced any issue or defect . . . ."); *Stearns*

20 *v. Select Comfort Retail Corp*., 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010).

21       Second, Mr. Erickson's proposed class definition does not define "the alleged

22 violations arising from Defendant's violation of [the FDCPA]," and therefore requires

potential members of the class to parse Mr. Erickson's complaint in order to determine

whether they fit within the class.  Mr. Erickson's class definition therefore does not

include the required "set of common characteristics sufficient to allow a prospective

plaintiff to identify himself or herself as having a right to recover based on the

description."  *Kristensen*, 12 F. Supp. 3d at 1303.

Finally, Mr. Erickson's proposed class definition contains no applicable

time-period; the definition therefore includes prospective class members who would not

satisfy the one-year statute of limitation for FDCPA claims.  15 U.S.C. § 1692k(d);

*Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939 (9th Cir. 2009).

Accordingly, the court exercises its discretion to modify Mr. Erickson's class

definition.  *See Armstrong v. Davis*, 275 F.3d 849, 872 (9th Cir.2001) ("Where

appropriate, the district court may redefine the class.").  The class shall now include:

> All Washington consumers who received collection letters and/or notices
> from Elliot Bay Adjustment Company, Inc. between March 16, 2015, and
> March 17, 2016,[14] that included the following language:

> NOT HAVING HEARD FROM YOU ON THIS ACCOUNT, **LEGAL
> ACTION** IS NOW BEING CONSIDERED.   TO AVOID PAYING
> ADDITIONAL COURT CHARGES AS WELL AS THIS AMOUNT,
> IMMEDIATELY SEND THE BALANCE **IN FULL** BY RETURN MAIL
> TO THE ABOVE ADDRESS.

---

[14] The timeframe for this class definition begins one year before Mr. Erickson filed his complaint.  (*See* Dkt. # 1.)

1   This revised class definition satisfies the efficiencies that Rule 23(b)(3) was designed to

2   achieve. *Briseno*, 844 F.3d at 1127. Accordingly, the court certifies Mr. Erickson's class

3   under Rule 23(b)(3) as redefined by the court.

4   ## IV.   CONCLUSION

5   For the foregoing reasons, the Court GRANTS Mr. Erickson's motion for class

6   certification (Dkt. # 11) and certifies Mr. Erickson's class under Rule 23(b)(3) as follows:

7
> All Washington consumers who received collection letters and/or notices
> from Elliot Bay Adjustment Company, Inc. between March 16, 2015, and
8   > March 17, 2016,[15] that included the following language:

9
> NOT HAVING HEARD FROM YOU ON THIS ACCOUNT, **LEGAL
> ACTION** IS NOW BEING CONSIDERED.   TO AVOID PAYING
10  > ADDITIONAL COURT CHARGES AS WELL AS THIS AMOUNT,
> IMMEDIATELY SEND THE BALANCE **IN FULL** BY RETURN MAIL
11  > TO THE ABOVE ADDRESS.

12  The court appoints Mr. Erickson as class representative. The court also appoints Mr.

13  Erickson's counsel, Ryan Pesicka,[16] to serve as class counsel. On or before April 17,

14  //

15  //

16  //

17

18  _____

19  [15] This class definition timeframe begins one year before Mr. Erickson filed his
complaint. (*See* Dkt. # 1.)

20
[16] The court notes that proposed class counsel Ari Marcus, who is licensed to practice law
21  only in New Jersey (Marcus Decl. ¶ 1) has not submitted an application for admission, *pro hac
vice*. (*See generally* Dkt.) The court appoints Mr. Marcus pending his admission, *pro hac vice*.
22  The court ORDERS Mr. Marcus to file his application for *pro hac vice* admission to the Western
District of Washington no later than April 3, 2017.

ORDER- 30

1    2017, the parties shall file a proposed form of class notice and a joint proposal for

2    dissemination of notice.

3            Dated this 30th day of March, 2017.

4

5

6

7    _____

8    JAMES L. ROBART
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 31